Affirmed and Memorandum Opinion
filed October 8, 2009.

 

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-08-00711-CR

____________

 

Donald Wayne Young, Appellant

 

V.

 

The State of Texas, Appellee

 



 



 

On Appeal from the Second Judicial District Court

Cherokee County, Texas

Trial Court Cause No. 17109

 



 



 

M E M O R A N D U M   O P I N I O N

A jury convicted appellant Donald Wayne Young of burglary of a building,
and after finding two enhancement paragraphs true, sentenced him to eleven
years’ confinement in the Texas Department of Criminal Justice, Institutional
Division.  In a single issue, appellant challenges the legal and factual
sufficiency of the evidence to support his conviction.  We affirm.

I.  Background

On the morning of January 17, 2008, Officer Eric Dawes and
Sergeant Royce McCullough of the Jacksonville, Texas police department received
notice of an anonymous call describing suspicious activity near an abandoned
medical building.  According to the caller, a blue Chevrolet Blazer had pulled
out from behind the abandoned building and parked at a Mini Mart across the
street; the driver of the vehicle got out of the Blazer and returned to the
building on foot.  Dawes and McCullough arrived separately at the Mini Mart and
found the described vehicle unoccupied; they noticed several hand tools on the
floor of the front passenger compartment.  Both Dawes and McCullough were
familiar with the building because it had been burglarized frequently in the
past.  McCullough pulled his patrol vehicle behind the Blazer so it could not
leave the parking lot; the two officers drove to the abandoned building in
Dawes’s patrol car.  They entered the unsecured building and began a “sweep”
for suspects.  

After searching the first floor, the two officers descended
the stairwell, where they found a blue tote containing several bathroom
fixtures, hand tools, and a flashlight.  As they continued their sweep of the
basement level, Dawes discovered two individuals, later identified as David
Scott Bachus and appellant, in the back corner of a basement room.  Bachus
matched the description of the individual seen parking the Blazer and walking
towards the building.  The officers discovered a second flashlight at their
feet, although no tools or plumbing fixtures were found on either Bachus or appellant. 
The officers secured the two individuals in the back of Dawes’s patrol car and
returned to the building to take pictures of the fixtures, tools, and
flashlights.  They then returned to the Mini Mart to examine the blue Blazer,
where they found more hand tools and a collection of receipts from a scrap
metal yard signed by Bachus; one of the receipts was dated the previous day.

At appellant’s trial, the two officers testified to the above
facts.  Appellant explained his presence in the building as follows.  He
testified that he was currently homeless, but had been living in a tent and
working cutting timber.  He had known Bachus for a number of years and had
tried to get Bachus a job with his employer.  According to appellant, Bachus
wanted to breed his dogs with appellant’s pit-bull dog, and the two went to
pick up appellant’s dog in Bachus’s Blazer on January 14.  Appellant testified
that after dropping his dog off at Bachus’s residence, Bachus was supposed to
take him back to his camp site.  Instead, according to appellant, Bachus
stopped at a local “crack house.”  Appellant stated that he waited for Bachus
outside the crack house for over an hour, but finally knocked on the door. 
Bachus came out of the crack house and told appellant he was “too high to
drive.”  Appellant testified that Bachus said he would take appellant somewhere
nearby to wait for Bachus to allow the effects of the drugs to subside.  

Appellant explained that Bachus dropped him off at the
abandoned medical building at around 2:00 or 2:30 a.m. the day before they were
discovered in the building.  According to appellant, he spent the next
twenty-four plus hours in the abandoned building without eating, drinking, or
venturing far from the room in which he was discovered.  He testified that he
had slept on a mattress that, according to appellant, was about seventy-five to
one-hundred feet away from him.  He claimed to have woken to the sounds of
movement followed closely by Bachus’s arrival and his warning that the police
had arrived.  Appellant asserted that he had never seen the tools found near
the stairway and that he had been using the flashlight found on the floor near
him to navigate in the dark.  Although he admitted that both flashlights found
in the building belonged to him, he had no idea how the flashlight found in the
blue tote had gotten there.  

Appellant also described his rather lengthy criminal
history—he admitted having been convicted previously of unauthorized use of a
motor vehicle, theft, and possession of a weapon.  On rebuttal, both Dawes and
McCullough testified that they had not seen a mattress in appellant’s
vicinity.  Finally, the State called retired police officer Randy Hatch to
testify about appellant’s character.  He stated that he knew appellant and that
appellant has a bad character for truth and veracity. 

After hearing the evidence, the jury convicted appellant of
burglary of a building and sentenced him to eleven years’ confinement in the
Institutional Division of the Texas Department of Criminal Justice.  The trial
court entered judgment accordingly, and this appeal timely followed.

II. 
Analysis

In a single issue, appellant asserts that the evidence is
legally and factually insufficient to establish that he entered the building
with the intent to commit theft.  Specifically, he asserts that he entered the
building to wait for Bachus to return and pick him up, rather than with the
intent to commit theft.

A.        Standard of Review

            When reviewing the legal sufficiency
of the evidence, we do not ask whether we believe the evidence at trial
established guilt beyond a reasonable doubt.  Jackson v. Virginia, 443
U.S. 307, 318–19 (1979).  Rather, we examine all the evidence in the light most
favorable to the verdict to determine whether any rational trier of fact could
have found the essential elements of the offense beyond a reasonable doubt.  Id.
at 319; Mason v. State, 905 S.W.2d 570, 574 (Tex. Crim. App. 1995) (en
banc).  Although we consider all evidence presented at trial, we may not
re-weigh the evidence and substitute our judgment for that of the jury.  King
v. State, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000) (en banc).  In other
words, the jury is the exclusive judge of the credibility of witnesses and of
the weight to be given their testimony, and it is the exclusive province of the
jury to reconcile conflicts in the evidence.  Wesbrook v. State, 29
S.W.3d 103, 111 (Tex. Crim. App. 2000) (en banc).  We consider both direct and
circumstantial evidence, and all reasonable inferences that may be drawn
therefrom in making our determination.  Clayton v. State, 235 S.W.3d
772, 778 (Tex. Crim. App. 2007).  

When reviewing the factual sufficiency of the
evidence, on the other hand, we review all the evidence in a neutral light,
favoring neither party.  Watson v. State, 204 S.W.3d 404, 414–15 (Tex.
Crim. App. 2006); Drichas v. State, 175 S.W.3d 795, 799 (Tex. Crim. App.
2005).  We then ask (1) whether the evidence supporting the conviction,
although legally sufficient, is nevertheless so weak that the jury’s verdict
seems clearly wrong and manifestly unjust, or (2) whether, considering
conflicting evidence, the jury’s verdict is against the great weight and
preponderance of the evidence.  Watson, 204 S.W.3d at 414–15, 417; Johnson
v. State, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000).  We cannot conclude that
a conviction is “clearly wrong” or “manifestly unjust” simply because, on the
quantum of evidence admitted, we would have voted to acquit had we been on the
jury.  Watson, 204 S.W.3d at 417.  Nor can we declare that a conflict in
the evidence justifies a new trial simply because we disagree with the jury’s
resolution of that conflict.  Id.  We must give due deference to the
jury’s determinations, particularly those concerning the weight of the evidence
and the credibility of witness testimony.  See  Johnson, 23 S.W.3d at
8–9.

B.        Application

As is relevant here, a person commits the offense of burglary
of a building if, without the effective consent of the owner, he enters a
building not then open to the public with the intent to commit theft.  Tex. Penal Code Ann. § 30.02(a)(1)
(Vernon 2003).  As an essential element of burglary, intent must be proved by
the State beyond a reasonable doubt and may not be left simply to speculation
and surmise.  Coleman v. State, 832 S.W.2d 409, 413 (Tex. App.—Houston
[1st Dist.] 1992, writ ref’d) (citing LaPoint v. State, 750 S.W.2d 180,
182 (Tex. Crim. App. 1986) (en banc)).  The intent to commit theft must exist at the time
of and accompany the entry into the habitation; if it is formed after the
entry, the offense of burglary has not been established.  See id.  

The intent with which a defendant enters a building is a fact
question for the jury to decide from surrounding circumstances.  Lewis v. State,
715 S.W.2d 655, 657 (Tex. Crim. App. 1986) (en banc).  Further, determining
intent is a highly fact-specific endeavor.  Cf. Stearn v. State, 571
S.W.2d 177, 177–78 (Tex. Crim. App. [Panel Op.]1978) (concluding that sufficient
evidence of intent to commit theft supported verdict when defendant was
discovered in the kitchen of a private residence, nothing was disturbed beyond
what was necessary to enter, and he fled when discovered); Black v. State,
183 S.W.3d 925, 928–29 (Tex. App.—Houston [14th Dist.] 2006, pet. ref’d) (stating
that evidence of intent to commit theft was sufficient because appellant was
found inside a school, his shoe prints were on a broken window, and a computer
was packed up and “ready to go”).

            Viewing the evidence detailed above, a rational juror could
have inferred that Bachus dropped appellant off outside the building just
before the burglary on the morning of January 17, went across the street to
park his car at a non-suspicious location, and returned to burglarize the
facility with appellant.  Indeed, the only evidence that appellant was not
dropped off immediately before Bachus parked his car at the Mini Mart came from
appellant himself; the jury may have disbelieved appellant’s version of
events.  See Wesbrook, 29 S.W.3d at 111; Johnson, 23 S.W.3d at
8–9.  And although appellant claimed he spent much of his long stay in the
abandoned building sleeping on a mattress in one of the rooms, both officers
testified that they did not see a mattress in appellant’s vicinity.  Finally,
as noted supra, appellant’s credibility was called into question by the
testimony of retired police officer Hatch.

Viewing the evidence in the light most favorable to the
verdict, we conclude that a rational trier of fact could have found that
appellant entered the abandoned building with the intent to commit theft.[1] 
Further, viewing all the evidence in a neutral light, we cannot say that the
jury’s verdict is so contrary to the overwhelming weight of the evidence as to
be clearly wrong and unjust, nor is the verdict against the great weight and
preponderance of the evidence.  We therefore overrule appellant’s sole issue on
appeal.




 

III.  Conclusion

            Having
overruled appellant’s only issue, we affirm the trial court’s judgment.

 

 

 

 

                                                                                    

                                                                        /s/        Eva
M. Guzman

                                                                                    Justice

 

 

 

Panel consists of Justices Anderson, Guzman, and Boyce.

Do Not Publish — Tex. R. App. P. 47.2(b).









[1]
Cf. Wilkerson v. State, 927 S.W.2d 112, 115 (Tex. App.—Houston [1st
Dist.] 1996, no writ) (concluding that there was sufficient evidence of intent
to commit theft because defendant was found in a grocery store in the middle of
the night, even though he claimed he had fallen asleep during open hours and
woken up to find himself trapped, and had never seen the gloves, flashlight,
and hammer found near him before); Thomas v. State, 750 S.W.2d 320, 321–22
(Tex. App.—Dallas 1988, no writ) (determining that evidence of intent to commit
theft was factually sufficient when defendant was found lying face down and
awake in darkened storage room of broken-into building).